IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GLEN TORIKAWA, | ) | CIVIL NO. 08-00322 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | AND PLAINTIFF'S COUNTERMOTION |
| UNITED AIRLINES, INC., et al., | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S COUNTERMOTION FOR SUMMARY JUDGMENT

I.  INTRODUCTION.

Glen Torikawa, a former mechanic for United Airlines, Inc., brings this action pursuant to Hawaii's Whistleblowers' Protection Act, section 378-61 of the Hawaii Revised Statutes, claiming that he was fired because he had made complaints to United Airlines. Torikawa alleges in the Complaint that the complaints he made to United Airlines pertained to "unsafe airline practices." See Complaint (June 13, 2008) ¶ 6.

On April 13, 2009, United Airlines moved for summary judgment, arguing that any claim arising out of complaints about airline safety was preempted by the Federal Aviation Act of 1958 ("FAA"), the federal Airline Deregulation Act of 1978 ("FADA"),[1]

---

[1]To avoid confusing the Airline Deregulation Act of 1978 with the Americans with Disabilities Act, both of which are sometimes referred to as the "ADA," this court refers to the

and/or the federal Whistleblower Protection Program of 2000 ("WPP").

On May 18, 2009, this court held a hearing on United Airlines' motion. Concerned that Torikawa's failure to identify the exact bases for his whistleblower's claim was creating confusion, this court asked Torikawa to further clarify the bases of his claim on May 20, 2009, and again on July 9, 2009.

Based on Torikawa's earlier filings and statements in this case, this court, like United Airlines, had expected Torikawa to identify various federal statutes, regulations, and/or standards pertaining to airplane safety that United Airlines had allegedly violated and that related to the complaints he had voiced. However, in his supplemental filing of June 5, 2009, and again at the hearing on July 13, 2009, Torikawa clarified that his whistleblower's claim arises only from his complaints regarding United Airlines' alleged violations of the Occupational Safety and Health Act of 1970 ("OSHA"). Torikawa stated that, although he had made complaints pertaining to actual airline safety, his whistleblower's claim did not encompass the range of those complaints. In fact, at the July 13, 2009, hearing, Torikawa explicitly waived his whistleblower's claim to the extent it had been based on his complaints about airplane or flight safety. Instead, Torikawa limited his whistleblower's

---

federal Airline Deregulation Act of 1978 as the "FADA."

claim to allegations that he suffered retaliation for having complained about employee safety.  That is, Torikawa limited his whistleblower's claim to his allegation that he was terminated because he made complaints about United Airlines' alleged OSHA violations relating to the use of automobile tires on bag tractors, improper inflation of tires on bag tractors, and the lack of eye wash at his workplace.

        Given Torikawa's clarification of his claim, United Airlines characterized its preemption motion as moot.  As the motion remains pending, this court now denies the motion, ruling that Torikawa's whistleblower's claim arising out of alleged violations of OSHA is not preempted by the FAA, the FADA, and/or the WPP.  The court also denies Torikawa's countermotion seeking a ruling that his whistleblower's claim is not preempted.  Although United Airlines may no longer assert that Torikawa's clarified claim is preempted by the FAA, the FADA, and/or the WPP, Torikawa's motion leaves open the question of whether there are other preemption issues.

        Torikawa also seeks partial summary judgment with respect to the Department of Labor's determination that his claim brought under the WPP was untimely.  Torikawa asks this court to rule that this administrative decision has no res judicata effect.  That part of Torikawa's countermotion is denied, as Torikawa has clarified that his state-law whistleblower's claim

is based on three complaints of alleged OSHA violations and not on any complaint pertaining to airline safety, making irrelevant the Department of Labor's dismissal of a claim based on different allegations.

II.        SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007). "The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Rule 56 Advisory Committee Notes, 2007 Amendments. The court therefore interprets the amended rule by applying precedent related to the prior version of Rule 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (quotations and brackets omitted).

III.     BACKGROUND FACTS.

The basic facts underlying this case are, for the most part, undisputed.  Torikawa was a Ground Equipment Mechanic for United Airlines.  See Plaintiff Glen Torikawa's Response to Defendant United Airlines, Inc.'s First Request for Answers to Interrogatories ¶ 10 (Dec. 12, 2008) (attached to United Airlines's Concise Statement as Ex. 3).  On or about January 30, 2004, Torikawa says he sent a letter to United Airlines Chief

Executive Officer, Glenn F. Tilton, raising safety concerns.  See Ex. 4 to United Airlines's Concise Statement.

On or about September 8, 2004, United Airlines furloughed Torikawa, giving him the option of accepting layoff status with the right of recall or a transfer to another location based on seniority.  See Ex. 5 to United Airlines's Concise Statement.  Torikawa opted to be laid off with the right of recall.  See Ex. 6 to United Airlines's Concise Statement.  On or about April 24, 2006, United Airlines recalled Torikawa.  See Ex. 7 to United Airlines's Concise Statement.

On or about June 22, 2006, United Airlines sent Torikawa a letter indicating that, because it had not received his medical clearance, he was ineligible for recall and was separated from employment with United Airlines.  See Ex. 8 to United Airlines's Concise Statement.

Torikawa's Complaint asserts that the real reason he was terminated was that he had previously lodged safety complaints.  At the hearing before this court on July 13, 2009, Torikawa clarified that his whistleblower's claim was limited to complaints pertaining to United Airlines' use of automobile tires on bag tractors, improperly inflated tires on bag tractors, and the lack of eye wash at his workplace.

It is undisputed that Torikawa filed a complaint regarding his termination for allegedly reporting airline safety

violations with the Department of Labor and that the complaint was dismissed as untimely.

IV.     ANALYSIS.

There are three circumstances in which state law is preempted under the Supremacy Clause, U.S. Const. art. VI, cl. 2: (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) implied field preemption, where state law attempts to regulate conduct in a field that Congress intended federal law to occupy exclusively; and (3) implied conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.  Indus. Truck Ass'n, Inc. v. Henry, 125 F.3d 1305, 1309 (9th Cir. 1997) (citing English v. Gen. Elec. Co., 496 U.S. 72, 78-80 (1990)); accord Montalvo v. Spirit Airlines, 508 F.3d 464, 470 (9th Cir. 2007). With respect to each of these types of preemption, "Congressional intent to preempt state law must be clear and manifest." Indus. Truck, 125 F.3d at 1309.

United Airlines argues that Torikawa's state-law whistleblower's claim is preempted by the FAA, the FADA, and/or the WPP. Given Torikawa's clarification of his claim, this court rules that the FAA, the FADA, and the WPP do not preempt his

whistleblower's claim based on his complaints pertaining to alleged OSHA violations.

Under the FAA, the "entire field of aviation safety" is impliedly preempted. See Montalvo, 508 F.3d at 468. Torikawa's whistleblower's claim is premised on his reporting of alleged OSHA violations and has nothing to do with aviation safety. Accordingly, the FAA is inapplicable and does not preempt Torikawa's whistleblower's claim.

Similarly, the FADA, 49 U.S.C. § 41713(b)(1), does not preempt Torikawa's whistleblower's claim. That provision states:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). Because Torikawa's whistleblower's claim does not relate to or have a significant effect on the rates, routes, or services of United Airlines, the FADA does not preempt his claim. See Morales v. Trans World Airlines, 504 U.S. 374, 383 (1992); Montalvo, 508 F.3d at 475; Charas v. Trans World Airlines, 160 F.3d 1259, 1265-66 (9th Cir. 1998) (en banc); see also Gary v. Air Group, Inc., 397 F.3d 183, 190 (3d Cir. 2005) (holding that a state-law whistleblower's claim is not related to the service of an air carrier within the meaning of § 41713(b)(1)); Branche v. Airtran Airways, Inc., 342 F.3d 1248,

9

1262-63 (11th Cir. 2003) (noting that a whistleblower's claim generally pertains to a post hoc reporting of an FAA violation and is therefore not related to the service of an air carrier). Id. at 1262-63.

Finally, the WPP, which was enacted as part of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121, Pub. L. 106-181, 114 Stat. 61, 145 (Apr. 5, 2000), does not preempt Torikawa's whistleblower's claim. The WPP generally prohibits discrimination against an airline employee who has provided or is about to provide air safety information to the employer or the federal government. See 49 U.S.C. § 42121(a)(1). Torikawa is not basing his whistleblower's claim on any complaint relating to air safety. Instead, his claim is based on his reporting of OSHA violations pertaining to employee safety.

To the extent Torikawa seeks summary judgment on the issue of whether his whistleblower's claim is preempted, his motion is denied. Although this court rules that the FAA, the FADA, and the WPP do not preempt his claim, Torikawa has not demonstrated as a matter of law that his claim is not otherwise preempted.

The court notes that any person who "believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 90

days after the date on which such violation occurs, file . . . a complaint with the Secretary of Labor alleging such discharge or discrimination." 49 U.S.C. § 42121(b)(1) (emphasis added).  The final order of the Secretary of Labor on such a complaint may be appealed to a Circuit Court of Appeals and is "not subject to judicial review in any criminal or other civil proceeding." 49 U.S.C. § 42121(b)(4).  Although Torikawa's complaint to the Secretary of Labor about being terminated for allegedly reporting airline safety violations was dismissed as untimely, that dismissal has no effect on Torikawa's present claim, which is a state-law whistleblower's claim based on Torikawa's reporting of OSHA violations.

V.      CONCLUSION.

For the reasons set forth above, United Airlines' motion for summary judgment and Torikawa's countermotion for summary judgment are denied.

Given Torikawa's clarification of his claim, United Airlines may certainly conduct additional discovery and/or file another motion seeking summary judgment on the clarified claim, although, in so stating, this court is by no means indicating any inclination with respect to any such motion.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 17, 2009.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Torikawa v. United Airlines, et al., CIVIL NO. 08-00322 SOM/BMK; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S COUNTERMOTION FOR SUMMARY JUDGMENT